Good afternoon, everyone. This is the time for the hearing on Regents of the University of California v. the Department of Homeland Security. I understand that Council has split their time three ways, and you are to inform the Court what your division of time will be. Yes, Your Honor, Michael Mondgen for the State of California. We'll be dividing our minutes, 14 minutes for the State, 8 minutes for the Regents, and 8 minutes for the individual plaintiffs. Mr. Davidson will be arguing for the Regents, and Mr. Rosenbaum for the individual plaintiffs. 15, 8, and 8. All right, you may proceed. May it please the Court, Hashim Lupan for the United States. I'd like to reserve 7 minutes for rebuttal. All right, what's your clock? The rescission of DACA was a discretionary enforcement decision that the INA did not in any way constrain. The Acting Secretary decided, taking into consideration both the Texas litigation that had invalidated the similar DAPA and expanded DACA policies, as well as the Attorney General's opinion that DACA likely would and should be invalidated as well, the Acting Secretary concluded that DACA should be rescinded. That rational enforcement decision is committed to agency discretion by law, and in any event, it was not arbitrary and capricious or otherwise unlawful. But if I could start with the reviewability argument, Your Honors, enforcement decisions are committed to agency discretion under Heckler v. Cheney. That is true both for broad enforcement decisions and for... I thought Heckler v. Cheney was a decision not to enforce. And Heckler also applies to decisions to enforce. This Court has recognized so twice, both in Morales de Soto and Mataluna. Both of those cases, both of them actually in footnote 4 of each opinion, recognize that the decision to enforce, just like the decision not to enforce, is committed to agency discretion by law. Likewise, the fact that this is a broad enforcement decision rather than a narrow enforcement decision is also subject to Heckler. Heckler itself was a broad categorical decision not to enforce the FDCA against the death penalty in this industry. And this Court in the Alaska Fish case has likewise recognized that a broad policy not to enforce the law is subject to Heckler. What do you make of Cheney's footnote 4 that suggests review is permissible if the decision is really based on the agency's belief that it lacked jurisdiction? Cheney specifically carved that issue out, right? So what Heckler says is that enforcement decisions are presumptively non-reviewable. And then at pages 832 and 833, which is where footnote 4 appears in the opinion, what Heckler describes is when that presumption can be rebutted. And the presumption can be rebutted when the agency exceeds the discretion that if there are any constraints that Congress has imposed on them. So if while enforcement discretion is normally not reviewable, if Congress imposes standards or even the agency imposes constraints on itself, and the agency exceeds those constraints, then there can be a review. What footnote 4 said in Heckler, in the court reserve judgment on the question, is that it is possible that if an agency acts based on the belief it doesn't have jurisdiction, or if it otherwise so refuses to enforce the law that it could be viewed as an abdication of its responsibility to enforce the law, that could be viewed potentially likewise as exceeding the constraints imposed on the discretion. But why isn't it the situation? Because there's a critical difference, Your Honor. The agency says that DACA is unlawful, was implemented unlawfully. If we believe that that's not the case, then wouldn't that give rise to jurisdiction under Cheney? No, Your Honor, because there's a critical difference for purposes of Cheney's footnote 4 between an agency's belief that it lacks jurisdiction to enforce the law and an agency's belief that it lacks jurisdiction not to enforce the law. When an agency doesn't enforce the law, there is a risk, at least a potential risk, that it can go beyond prosecutorial discretion and lead to the abdication of the responsibility to enforce the law, and thereby exceed the constraints imposed by Congress. Even the last administration recognized this in the OLC opinion when they refused to extend DACA to parents of DACA recipients. They recognized that there's a risk that prosecutorial discretion could go so far as to be an abdication of responsibility. The converse is not true. If an agency decides to enforce the law, and if it decides to enforce the law vigorously, if it decides to have a zero-tolerance policy, even if that decision is erroneous in the sense that nothing required it to have a zero-tolerance policy, that does not mean it has exceeded the constraints on its discretion. And so, again, I think it's important to understand what the point of footnote 4 of Heckler was. It was laying out, and this is clear both in the footnote itself and the text accompanying the footnote, it is discussing how there are constraints on agency discretion. There is simply no constraint in the INA on the agency's decision here. Nothing in the INA required the agency to have DACA. Nothing in the INA prohibited the agency from getting rid of DACA. Nothing in the INA imposed any constraints or factors or standards that the agency had to consider before it eliminated DACA. There simply is no way to argue under Heckler, either the text or footnote 4, that the agency exceeded the constraints on its discretion when it eliminated DACA, and that is decisive under Heckler. The plaintiffs have relied on a strand of cases, including Crowley and the second half of the Montana Air chapter, that suggest that broad enforcement decisions, they think, are reviewable. And I think that they're misreading those cases. And I think there are two points to make about that. First, again, Heckler itself was a broad categorical policy not to enforce. So we know right then and there that they have to be making a mistake somehow. And what the mistake they're making, if you look at the D.C. Circuit's case law, if you look at a case like, for example, Brock, there's a fundamental difference between whether the enforcement decision itself is reviewable and whether the underlying rationale is reviewable. So the D.C. Circuit's decision in Brock is a perfect example of this, Your Honor. In Brock, the agency said it wasn't going to take enforcement action against a certain entity because it viewed the statute not to cover their conduct. And what the D.C. Circuit said was two things. As to the enforcement decision itself, that was non-reviewable. They would not second-guess the decision not to seek enforcement, even though that decision was based on a broad categorical view of what the law covered. However, what they then said was the underlying rationale, that could be reviewed. Separate and apart from the enforcement decision, the rationale could be reviewed. And the reason that the D.C. Circuit gave is the legal rationale itself could be viewed as an interpretive rule that if it had been said outside the context of an enforcement decision, everyone would recognize it was at least potentially reviewable. And the fact that it had been put in an enforcement decision didn't shield it from review. It is, in a sense, the flip side of what the Supreme Court said in BLE. In BLE, what the Supreme Court said is that a non-reviewable decision doesn't become reviewable because the rationale given is otherwise reviewable. What cases like Crowley and Brock stand for is the converse proposition, that a rationale that would be reviewable outside of the enforcement context doesn't somehow become non-reviewable because it's placed within the enforcement context. But what's critical to recognize about all those line of cases is what they are talking about is whether the rationale is reviewable, not the underlying decision. And this is clear from Brock because the court actually differentiated between the two. It's also clear from Crowley because the plaintiff there wasn't even challenging the enforcement decision. In Crowley, the plaintiff agreed with the enforcement decision. The enforcement decision in Crowley was to deny a waiver. The plaintiff in Crowley wanted the waiver to be denied. All they were objecting to was the rationale the agency gave for denying the waiver. And that's why Crowley talked about in what circumstances you can review the reasons given for an enforcement decision. But Crowley did not hold and could not hold that you could review the underlying enforcement decision. That would be contrary to the D.C. Circuit's decision in Brock, and it would be contrary to the Supreme Court's decision in BLE. So you're characterizing the decision to rescind as a decision to enforce. But actually, your opposing counsel would characterize it as a decision to undo an entire program that had all these other benefits and issues, where people were made to be lawfully residing in the United States. Is this just semantics we're talking about, or is there an actual distinction here? So I don't think their attempt to latch onto the benefits that attach to deferred action changes the analysis, Your Honor. Deferred action, first and foremost, is a policy of prosecutorial discretion. Just as adopting it is a policy of prosecutorial discretion, removing it is a policy of prosecutorial discretion. Both DHS when it first announced this policy, the courts when they ruled on this policy, the last administration when they defended this policy described it as a prosecutorial discretion policy. All right. Accept that. Before the institution of DACA was made, there was a 32-page decision and memo by the Office of the Legal Counsel. It's actually a part of the administrative record in this case. Yet the decision to rescind appears to be based entirely on this letter from Attorney General Sessions that says, basically, the Fifth Circuit found this DAPA, not even DACA, unlawful, and therefore we must rescind DACA. Now, if that is wrong as a matter of law, which is, as Judge Alford said, a question put essentially for the court, can the decision to rescind stand? Yes, Your Honor. Again, the Supreme Court addressed this in BLE where if a nonreviewable decision, the reason given for it is otherwise reviewable, that does not render the decision itself reviewable. The BLE didn't apply here, though. There, the court found, by evidence chained, it found that there was a tradition of denial of the reconsiderations of an agency's own opinion to be nonreviewable. What tradition of nonreviewable? I mean, the Fifth Circuit found DAPA reviewable, and that was the government's position at the time was that it wasn't reviewable. So the tradition of nonreviewability here is for enforcement decisions, which, as I said at the outset, we know that decisions to enforce are nonreviewable, just like decisions not to enforce. This court has held exactly that in footnotes for both Morales de Soto and Madaluna. We know that broad decisions, enforcement decisions, are nonreviewable. That's Cheney itself, as well as this court's decision in Alaska Fish. So this is a presumptively nonreviewable decision. Now, to be sure, presumptively nonreviewable decisions, the presumption can be rebutted if the agency exceeds its discretion that Congress has given it, and that is why the Fifth Circuit held in Texas that DAPA was reviewable, because they held that that scheme, sorry, that DAPA was reviewable. The reason they held that was they held that DAPA so exceeded the congressional scheme that it ceased to be a valid prosecutorial discretion policy, and it was essentially an abdication of responsibility under the statute. Critically, they are not arguing that here. They are not arguing that we violated the INA by getting rid of DACA. They cannot possibly argue that we violated the INA by getting rid of DACA, because the INA does not say a single word about whether we are required to maintain this policy. What's the analytical distinction between believing that you've exceeded your statutory power and believing that you have no authority to implement or take certain decisions? The analytical distinction, going back to Heckler v. Cheney, is the question is whether you have exceeded the constraints on your discretion. If you refuse to enforce the law completely, let's take a simple example. Imagine DHS had said, we're not enforcing the law against anyone. Everyone gets deferred action. In that system, even the last administration agreed that that would go too far, that that exceeds the constraints of valid prosecutorial discretion. One scenario, you've exceeded the constraints on your discretion. In the second scenario, you didn't think you had any discretion at all. But you haven't exceeded it. Because you think it's an unlawful action. Right, but there's nothing illegal about that. If DHS had just ceased to enforce the entire INA, everyone agrees, including the last administration, and I assume plaintiffs themselves would say that that would not be proper. But if DHS, on the other hand, chooses to enforce the law with full vigor, if they adopt a zero-tolerance policy, that does not exceed the constraints on discretion. They might have been wrong that they had to do that if they adopted that policy. But they are not acting illegally by having that policy. It is perfectly lawful to have a zero-tolerance enforcement policy. Nothing in the INA says otherwise. But it is potentially unlawful to refuse to enforce the statute against a wide swath of people. OLC recognized that with respect to the expansion of DACA, to parents of DACA, and that's what the Fifth Circuit held with respect to DAPA. There's a fundamental difference when you're asking whether an agency has exceeded the constraints on its enforcement discretion between not enforcing the law and enforcing the law. Aren't there fundamental differences between DAPA and DACA? I don't think so, Your Honor. So their primary example that they have articulated for why there's a difference between DAPA and DACA is they say that DAPA, there was a path to citizenship, or path to lawful status, and that's not true for DACA. And that's wrong for at least three reasons. First, it's not even true for DAPA itself because DAPA applied to two sets of people. It applied to parents of U.S. citizens and parents of LPRs, lawful permanent residents. There was no path to citizenship or lawful status for LPRs, and the Fifth Circuit noted that on pages 179 to 180 of its opinion. So their own distinction doesn't even work for DAPA itself. The second is the district court and the Fifth Circuit struck down not just DAPA but the expanded DACA program. The expanded DACA program, the only difference between expanded DACA and regular DACA was the age limit and the residence requirement. That would have been a recent part of its analysis. It just kind of swept it out with the DAPA because it was swept in with the DAPA. Well, I think that just underscores our point that they're completely indistinguishable. And if you think it was sloppiness on the court's part, I would note that the Solicitor General... I didn't use the word sloppy. I would not say that about a fellow circuit. Fair enough, Your Honor. Let me just say this. It's apparently the case that both the district court and the Fifth Circuit thought that the two policies were so similar that it didn't even require separate analysis. And even the last administration, when they went to the Supreme Court and saw the Supreme Court review of it, they didn't make an argument in the alternative that said, look, even if we're wrong about DAPA, well, at least we're right about expanded DACA. Let me ask something. Is DACA unlawful? Is it inconsistent? Is it your position that DACA is inconsistent with the Act? Yes, it is the government's position that DACA exceeds the scope of permissible prosecutorial discretion, that a policy of such sweeping magnitude and such categorical nature for the rationale given is not a permissible exercise of enforcement discretion. But the more fundamental point here, Your Honor, is the decision here by the Acting Secretary does not turn on that. And I think that's a very important point. What the Acting Secretary did not say that she was getting rid of DACA because it is illegal and she must do so. What she said, and it's critically different, is that taking into consideration the Attorney General's opinion that it is unlawful, and the fact that the Texas litigation had struck down similar policies, she should get rid of DACA. That is a quintessential exercise of enforcement discretion. It is a decision that this policy is of sufficiently doubtful legality that she wanted to get rid of it and she thought that she should get rid of it. That doesn't turn on whether or not the Attorney General is right or whether or not the Fifth Circuit is right. A law enforcement agency like the Department of Homeland Security is perfectly entitled to decide that it does not want to have a prosecutorial discretion policy that might itself be unlawful. So isn't that just trading one set of litigation for another? Your Honor, this isn't a litigation risk like you might have with a private party where you have a private party who wants to do what they want to do unless they get caught and get sued. This is a law enforcement agency who has taken an oath to obey the Constitution and they don't want to have a prosecutorial discretion policy of questionable legality. It's not a question of trading one lawsuit for another. It's a question of an agency saying, we're not going to have a policy that might well be illegal. That is a perfectly rational thing to do. And again, this is an arbitrary and capricious challenge. They are not saying that the INA requires this policy to be maintained. They are saying that the agency acted arbitrarily and capriciously by getting rid of a policy in the face of serious legal concerns. I'm sorry, I want to make sure I have some chances to ask some questions of you and you're running out of time. We have to decide the Equal Protection Clause challenge in this case as well. Is that right? Yes. When evaluating the preliminary injunction that was granted in this case, I know that the plaintiffs did not move on equal protection grounds, but that is part of their complaint and we do have to decide that question in this case. If we were to evaluate whether the district court correctly granted the preliminary injunction, what, if anything, can we look at in terms of an equal protection challenge? I don't think this court can look at the equal protection challenge for purposes of the preliminary injunction because of the procedural posture. Their briefs heavily emphasize on their equal protection claim, they emphasize the fact that they claim that they sufficiently pled it. But allegations of evidence and motive in a preliminary injunction, you can't rest on just allegations. You actually need to have facts and evidence to support it. So it's a different procedural posture and it would be a different potentially evidentiary record. So I don't think that this court can reach the equal protection claim on the PI. I think it's limited to the motion to dismiss. Do you have any authority for that? Off the top of my head, no, Your Honor, but there is a pretty different procedural posture. We didn't have the opportunity, for example, to see whether their allegations that they have put in their complaint would rise to the level that's necessary to meet the higher standards to get a preliminary injunction. Fair enough. But you would agree that it's in the complaint and the case law I've seen says when we evaluate the motion for a preliminary injunction, we are limited to what's in the complaint. You can't raise some new constitutional argument in the motion, but do you know of any authority that says we cannot consider something, even though, and I'm going to ask the plaintiffs a lot of questions as to why they didn't raise the equal protection at this stage, but I know they've disavowed it in their motion for a preliminary injunction, but do you know of any authority that says we cannot look at it? Again, off the top of my head, no, with the following caveat. There is lots of case law that I can't give you a cite right now for the proposition that in the complaint they're allowed to rest on your allegations. In a preliminary injunction, you actually have to have facts and evidence. So even if you stipulate that what they pled might have been enough, that's not necessarily enough to prove it, and they didn't put forward declarations. They didn't put forward any evidence. So at that level, it seems to me that it would be procedurally improper to reach beyond the motion to dismiss this stage on their equal protection claim. But let me just turn to the equal protection claim on its merits. I think it fails on the merits. It never gets to the PI stage because it should lose on the complaint. I think it's critical here that the Supreme Court in AADC said that challenges to selective enforcement in the immigration context are just not permissible as a general matter because the normal discretion that you have in, for example, selective prosecution claims in the criminal side are aggravated in the immigration context because what you're dealing with is an ongoing violation of federal law, and you have plaintiffs who have marked incentive to delay by raising selective prosecution claims. In AADC, which is what you're talking about, I think in that case the petitioners were clearly already deportable. They were found to be deportable. They were being deported, and that's when they raised this selective enforcement defense to deportation, and that's what the Supreme Court said you couldn't do. They didn't say you can't bring an equal protection claim when the agency takes action that disproportionately affects one protected group over another. I would think that that's an even stronger case, Your Honor. Again, the point of AADC is that there's enforcement discretion, and enforcement discretion can't be challenged on selective prosecution grounds. It's even worse than what they're challenging. Let me put it this way. In AADC, you actually had conceded facts that the government was treating one set of people worse than another set of people on the basis of First Amendment protected activity, and even that wasn't permissible as an equal protection claim. Here, they have a facially neutral policy, and they're just saying it has a disproportionate impact, and they're alleging it was based on impermissible motive. That's a weaker equal protection claim. I think you can make it clear. You brought a motion to Smith, and that has one set of legal standards, and they brought a motion for preliminary injunction, which is another set. Basically, for the preliminary injunction, we're looking at the APA. That's what you're saying. To found, the preliminary injunction was grounded. Yes, the preliminary injunction was on the APA, and their constitutional claims are equal protection claims on the motion to dismiss, but all I was saying is that there's no reason for purposes of AADC to differentiate between a selective prosecution claim and a discriminatory motive claim to a neutral policy. If anything, that distinction cuts in our favor because it is a- I know, counsel, this is not part of the record, but has the government made any decisions with regard to the D.C. court's suggestion that you could go back and redo the rescission memo? Not yet, Your Honor. We're actively considering it, but we, of course, think that the Duke memo is by itself sufficient, and since we've been enjoined and we have an appeal as a right, we're here defending that decision. We are actively considering what to do in light of the D.D.C. opinion. Can I ask you two little questions, two little minor things from the record, okay? One is Attorney General Sessions' letter. It doesn't have a date on it, but Elaine, acting DHS director, says in her opinion that it came, I guess, September 4, and her thinks September 5. Her decision is September 5. But why did-this came solely from the Attorney General, whereas the memo that authorizes DACA was issued by the Office of Legal Counsel? Isn't the Office of Legal Counsel opinion usually given controlling weight within the executive branch? Well, so two things, Your Honor. First of all, there was no OLC memo for DACA. The OLC memo you're thinking about is for DAPA. There was no OLC memo at all for DACA. The DAPA memo says that there was oral advice that was given. But the second, of course, is that the OLC is within the Department of Justice. The Attorney General is the OLC. So they can supersede anything that the OLC says? Yes. Okay. And, of course, the OLC memo was written in defense of DAPA before the Texas District Court, the Fifth Circuit, and the Supreme Court all rejected that analysis, which makes it eminently rational for the Department of Homeland Security  And the other thing I was curious about, I just have to ask. I'm sorry to take your time with little questions, but we need to resolve. Anyway, I can't find the quote from memory. When John Kelly said he would then, I guess, Director of DHS, John Kelly, said that he was going to rescind DAPA, one of the reasons he gave was that it had never gone into effect, whereas with respect to DACA, clearly it's gone into effect. Yet nowhere does the acting secretary give any weight to that fact. It seemed to weigh a lot to Director Kelly, so I'm trying to understand that. Well, so the INA, again, this is a purely discretionary decision whether it does maintain this policy. Nothing in the INA says that there's a requirement to consider reliance interests, particularly with respect to a policy that on its face was expressly temporary, that expressly conveyed no rights, and expressly acted for two-year periods. In those circumstances, it is eminently rational and certainly not arbitrary and capricious for the agency to decide that given the serious concerns about legality, it's going to rescind the policy. And I would point, Your Honor, to the fact that the DACA policy doesn't consider costs at all. There's not one word in the DACA policy about what costs there are with potentially allowing 700,000 illegal aliens to work in this country, despite the fact that there's an act of Congress that says they're not supposed to work. There's not one word in DACA that considers whether it's legal, despite the serious concerns about its legality. So if their view of arbitrary and capricious analysis were correct, and the agency has some sort of sua sponte obligation to consider all these things, then that's yet another reason why DACA is illegal. Well, in terms of the justifications that were given, the government's briefing focused heavily on the litigation risk, and the argument is that, well, you know, the government's entitled to assess that there's a litigation risk in the rescission. But how is that different than the concerns about DACA's legality? It seems to be one and the same under these circumstances. Your Honor, I think they're similar, but they're critically different from what they argue. What's the distinction? What's the difference? One is that just as an abstract matter, an agency is entitled to say that if there are serious concerns about the legality of a program, it doesn't want to continue the program. So that's in the abstract, but in this particular case, the litigation risk is based on the assessment as to the legality of the DACA program. Right. But, Your Honor, again, the reason there are two distinct aspects of it, but different from their third aspect, is the Attorney General has concluded that DACA was illegal. That in itself, as long as it's a rational decision, is a rational justification for a law enforcement agency to decide it's not going to maintain a prosecutorial discretion policy that the chief law enforcement officer of the country has decided is illegal. Now, the litigation risk piece of it is that's all the more true when there's an imminent lawsuit coming that's going to make exactly that argument and is likely to succeed because it's being brought in the same forum that already has controlling presence on these issues. Those are the two aspects. They are conceivably quite related, that there's a concern about legality and it's likely to be vindicated in the court. But both of those points are different from their argument, which is that it was a pure decision that it is illegal, therefore it must be rescinded. That is simply not what the letter says. If I could reserve the balance of my time. Sure. Thank you. Okay. Please set the clock for 14. Good morning and may it please the court. My name is Michael Mongan. I represent the state of California, and I will be dividing argument with Mr. Davidson and Mr. Rosenbaum. If it pleases the court, we plan to start with the reviewability issue and then move on to the APA and the preliminary injunction. Mr. Davidson will pick up on those issues and Mr. Rosenbaum will address the specific constitutional claims raised by the individual plaintiffs. As to both reviewability and the merits, I think the key feature of this case is that defendants based their decision to terminate this important program on the asserted legal conclusion that DACA is unlawful. And this court can and should review that conclusion under the APA and hold that we're likely to succeed on our claim because it is inadequately explained and incorrect. Now, I think what they did in the rescission memorandum is that they told the courts and they told the country that our hands are tied by the law, that we really don't have any option other than to discontinue this program. And if they're going to frame the decision in that way, then they can't turn around and say that the courts are barred from reviewing that legal conclusion and untie their hands if it's incorrect. Now, you heard from my friend a moment ago, he started and ended his presentation with the point that this was a discretionary decision in their view. That's just fundamentally incorrect. When an agency says that it lacks statutory authority to continue a program or to take some other action, it's not making a discretionary decision. It's saying that the law deprives us of discretion. It's a nondiscretionary decision, and that is just not what 701A2 or cases like Cheney or BLE are concerned about. What do you do with the fact that the memo or the session's letter did mention litigation risk? Your Honor, it mentioned the prediction that the fate of the DACA program might be similar to DAPA, but only after it asserted that the program was unconstitutional and based on a lack of statutory authority. And so we don't think that an alternative litigation risk assessment can be reasonably discerned in the memo, but even if it could be, it wouldn't affect the reviewability or the merits analysis here because, as Judge Bates explained in NAACP, even an alternative litigation risk assessment is entangled with the primary ground for this decision, which is their assertion that DACA is unlawful and unconstitutional. And it would be quite dangerous, I think, if an agency can take a reviewable legal conclusion and convert it into an unreviewable decision just by adding on a litigation risk rationale like that. Let me ask the contrary, though. What if in the letter from the Attorney General he said, I think we should dissolve DACA because I'm uncomfortable with it. I think it is inconsistent with separation of powers. If that was the reason, would that be enough to trigger our jurisdiction? So I think that these questions turn on the particular language, and I'm wary of conceding any hypotheticals because that might be the next case. But as you've described it, I think that that would be asserting a legal conclusion, just a different type of legal conclusion, that it's unconstitutional on a separation of powers theory. And if the acting secretary did what she did here, which is essentially to adopt that legal conclusion and base her decision on a legal conclusion, then yes, it would be analyzed similarly. That's a question that the courts are eminently suited to review, just like the question here about whether DACA exceeds the statutory authority of the agency under the INA. But to be clear, then, if the AG says, I think we should dissolve DACA because I don't like it, then that would, in your view, not be reviewable. But if he said, I think we should dissolve DACA because I don't like it because I think it's inconsistent with separation of powers, then those extra words would trigger reviewability. I think it does make sense to focus on the rescission memorandum as well because they say that this decision was made by the acting secretary, and so it would depend to a substantial extent on the reason given by the acting secretary. I understand the hypothetical. If you're positing that there's some sort of policy rationale for terminating DACA, then that would be analyzed separately. Now, our starting point would be that there's a strong presumption in favor of review of agency action, and so you'd have to look at whether there's manageable standards to apply. And they would have a stronger argument in that case that there's no law to apply there. We might argue the other direction depending on the circumstances. But even if a court ultimately found that type of policy decision, a truly discretionary decision, to be unreviewable, the virtue of that result, Your Honor, is that then the agency would have taken responsibility for a voluntary discretionary decision in a way that they have so far refused to do here. They would be standing up and telling the country that we have decided to terminate this important and popular program because we don't like it. And even if that weren't reviewable in a court of law, it would be reviewable in a court of public opinion, and there would be political accountability, which is one of the core purposes of the APA. But that purpose is not served by what defendants are doing here, which is to say that our hands are tied by the law, but then to turn around and say, but courts can't review this conclusion, that is just inconsistent with 701A2 and fundamental principles of administrative law. I heard a posting counsel today say that DACA was unlawful, that it was inconsistent with the INA. What is your view of that? Well, we absolutely disagree, and defendants themselves, of course, disagreed when they told this court in Brewer that DACA is a valid exercise of the Secretary's broad authorities under the INA. And so that itself is a basis for treating this as an invalid decision because cases going back to Chenery indicate that agency action based on a flawed legal premise is invalid. There's also a threshold problem that Judge Bates addressed in the NAACP order, which is especially when you have a situation where an agency is changing its long-standing position, the APA requires it to explain why. So they've told the courts in the country for half a decade that DACA is a lawful policy, and they've offered very detailed explanations of why that is so. If they're going to change their mind on that position, a position on which a lot of people relied in deciding whether or not to apply for DACA status, they've got to explain what they're doing. They've got to show their homework. And they haven't done that here in the rescission memorandum or in the Attorney General's letter. We have essentially one sentence in the rescission memorandum of explanation and a one-page, almost entirely conclusory letter from the Attorney General. They assert that this is a program that is statutorily invalid, but they don't explain what statutory provisions they think are violated. They assert that essentially this program is foreclosed by the Fifth Circuit's decision about DAPA in the Texas decision, but they don't, in the memo or in the letter, acknowledge material differences between the two programs and explain why they think the Fifth Circuit's decision controls. They assert now that DACA is unconstitutional, but they cite only the Texas rulings, which expressly contained no constitutional holdings. And they don't even acknowledge or address the 33-page OLC memo, which included an extensive discussion of the take-care duty and established that this general type of deferred action program, which has been a hallmark of immigration enforcement discretion in this country for half a century, that OLC memo concluded that these are lawful programs when operated as DACA is on a discretionary case-by-case basis as a matter of prosecutorial discretion. So they needed to explain those things for this not to be an arbitrary and capricious decision  They've done none of that, and their briefing and litigation can't rescue a decision that itself did not offer that explanation. Your Honor, as to the core question of whether DACA itself is lawful, as I noted, I think that they made this presentation forcefully in their brief in the Brewer case. The INA confers broad authority on the Secretary and the Department of Homeland Security, and that includes the authority to establish national immigration enforcement policies and priorities. And one way that DHS and its predecessor agencies have done that for half a century is to establish broad programs that guide the exercise of deferred action and other similar forms of discretionary immigration relief for a category of a substantial number of cases. That is a form of enforcement discretion that has been acknowledged by Congress, that Congress has never disapproved of. Deferred action itself is a commendable practice the Supreme Court has recognized, and it's well settled that that's within the authority of the Department of Homeland Security. And there are regulations promulgated under administrations of both parties that have recognized that this is a legitimate exercise of the broad authority conferred in the Department of Homeland Security. And so this is a lawful program, and as Judge Alsop held and Judge Gariffas held in the Eastern District, that is another reason why their decision is simply invalid. Well, Carol, so let's say I agree with you that DACA is legal, and let's say I agree with you that these kind of roving explanations in the past two years are not entirely consistent, kind of a constantly moving target. Tell me how I get around the Supreme Court's case, and I call it BLE, which has some, I think, some tricky language for you to overcome. My main concern in this case, from your position, is just disability. So how do I get around BLE? Well, I think the starting point is perhaps where I began, which is that BLE is about a type of agency action that the court has found to be traditionally unreviewable and a decision that was made on a wholly discretionary basis. And that's fundamentally different from what we have here. We don't think that this action does fall into the Cheney framework or to any other tradition of unreviewability, and I can address that. But even if you were treating it under the Cheney framework, this particular decision was based on a nondiscretionary determination, a determination that the agency essentially lacked jurisdiction. And I think that's where we would get to Montana AIR. Montana AIR is consistent with BLE because what it recognizes is that, yes, if there's some discretionary determination that an agency makes and it's accompanied with some discussion or legal analysis, then if that's a traditionally unreviewable type of action, that's not enough to overcome the presumption of review. But if it's made on a nondiscretionary basis, then that passage in BLE that they like to refer to just doesn't have any application here. And, of course, BLE is not a case that was specifically about the Cheney framework, and it was decided three years before this court's decision in Montana AIR. So that is an exception that's binding precedent within the Cheney context, regardless of what the court said in BLE. So you don't think there are any areas of the law where, regardless of the explanation given for why an agency is changing its decision, that there are essentially unreviewable? Well, I think that there are certain explanations that might be unreviewable in one context and not in another because you're operating within a traditionally unreviewable zone. But I think what Cheney establishes is that if you have a purely nondiscretionary decision where the agency says, as it did here, that our hands are tied and we have no option other than to bring this nonenforcement or to not bring this enforcement action, or other than to discontinue this program, that's just not the type of problem that 701A2 is concerned about. And, you know, if I might respond briefly to my friend's framework that he offered and is addressed in their supplemental brief, to the extent I follow the argument, I think that what they're saying is that there may be some type of embedded statutory interpretation that a court could review, but that it couldn't vacate the rescission memorandum even if the agency got it wrong on the law because that's a enforcement decision. And I think that there's three problems with that argument. The first is, as the court noted, this is just, we think, fundamentally different from an agency's decision not to enforce or to enforce the law against particular parties in a particular case. Second, I think that that argument that they spun out for you is foreclosed by Montana Air because there you had an individual non-enforcement decision, and yet this court did effectively review that decision and it sent it back down to the agency for it to exercise its discretion freed from its mistaken understanding of the law. And I think the final point is I don't think their framework is really coherent because the reason that a court can review this legal ground is because it's the ground the agency gave for making this decision. That follows from Chenery. And if the court concludes that they got it wrong on the law, then it should go back to the agency for them to make the decision anew. It just doesn't make sense to say that a court could review the embedded statutory interpretation but then is powerless to actually have any remedy, is powerless to vacate this decision which is invalid because of the improper legal conclusion. Your Honor, I see that I've exceeded my time. Perhaps if I could, unless the court has further questions for the states. Okay. Thank you very much. Please, the court. I'm Jeffrey Davidson, Covington & Berlin on behalf of the University of California plaintiffs. I'd like to start where my colleague picks up on the defense of the district court's injunction. As he correctly said, the injunction was correctly entered because the government's rescission of DACA was based on the incorrect conclusion of law and it's the quintessential role of the courts to review those conclusions of law and make sure that agencies are abiding by the law. I'd like to talk a little bit about the litigation risk rationale that the government has put in as a post hoc rationale in this litigation. As Judge Bates perceptively concluded, the litigation risk rationale here isn't meaningfully different from a legality rationale. A real rational litigation risk assessment would have to balance whatever litigation risk there might be against the programmatic objectives of the policy and to determine whether that risk might be worth taking. A rational litigation risk assessment would also have to consider whether there might be ways to mitigate the litigation risk, such as by adding discretionary elements to DACA or by putting it through notice and comment. And that kind of litigation risk simply cannot be found anywhere in the record. I would also note that the government seems to hang its textual basis for saying that there's a litigation risk analysis on a single word in the rescission memorandum. They say that because the acting secretary said that DACA should be set aside as opposed to must be set aside, that embedded in there is some kind of policy-based discretionary litigation risk analysis. And with respect to that position, it's just too heavy of an analysis to hang on the single word should. It brings me to the second reason why the injunction... Let me ask you a question. To what extent should we be relying on Attorney General Sessions' letter? Because he actually out and out states that the DACA policy has the same legal and constitutional defects that the courts recognize as to DAPA, and therefore it is likely that potentially imminent litigation would yield similar results. So he's saying it has the same legal and constitutional defects that the Texas decision said. And that's a conclusion of law. Now, is that imported into the case memorandum, the decision memorandum? I think it is, Your Honor. She says in view of the Fifth Circuit litigation and the Attorney General's letter, it's clear that DACA should be set aside. So she incorporates it by reference. Now, if the court were to conclude that it's vague, the rationale that was given for the rescission, under the Chenery line of cases, a vague rationale that can't be pulled out of the record, that's reason by itself to set aside the policy. But let me turn to a second reason why the injunction should be upheld. The rescission is also arbitrary because of what the government failed to consider. As Justice Kennedy said in the Encino Motor Cars case, when the government reverses a prior policy that's been effected, it needs to consider the circumstances that underlay that policy, and it needs to consider the interests of the people who are affected by it. The record here reflects not one word of consideration about the welfare of the 700,000 DACA recipients, not one word of consideration about the welfare of their families, including their 200,000 U.S. citizen children, not one word of consideration about the schools they attend, their employers, or even the national economy. And indeed, the record doesn't even consider the government's own purported support for the policy objectives of the program as the President's tweets after the rescission indicate. And so, quintessentially, the government can't set aside a policy that benefits this many people without even a single word of explanation for why it's doing so. While the question may be different for policies that are written on a blank slate, policies that reverse prior policies on which so many people have relied are different, and they provide the court with a hook for judicial review, as the Robbins v. Reagan case in the District of Columbia says. It says that even if the decision were discretionary, if it were brought on a clean slate, when it's reversing a prior policy, that provides a legal hook, law to apply, to evaluate whether the agency was rational in its rescission. I'd like to take a few minutes, if the court has no further questions, on the injunction to address our cross-appeal on our notice and comment claims. The government's failure to put the rescission through notice and comment forms an independent basis for affirming the injunction. Notice and comment rulemaking is required whenever an agency issues a substantive rule. This court has said what that means is a rule that narrowly limits the agency's discretion. This court has further said that the critical factor is the extent to which the challenge directive leaves the agency free to follow or not to follow the announced policy in any particular case. Here, the rescission is categorical. It does not leave the implementing officials with discretion about what to do in any particular case. It says that if you file a DACA application on September 6th, it will be denied. If you file a renewal application on October 6th, 2017, it will be denied. And so the rescission acts to constrain the agency's discretion, and so it's substantive, and it's binding. And the APA says that... Counsel, I apologize for interrupting, but can you cite to a case or think of any other programs where the implementation didn't require notice and comment, but the rescission did? I don't know if that precise issue has come up here, Honor. There's a line of cases, especially out of the D.C. Circuit, which get right to this question, which is, you know, let's suppose, you know, we think the DACA is the general policy statement that didn't need to go through notice and comment. It did have discretion in each individual case. But let's suppose that's not right and that it did have to go through notice and comment rulemaking. Still, the D.C. Circuit has said, and I think the consumer energy case is probably the best one on this, that even if there's a procedural infirmity in the rule itself, the rescission of the rule still has to go through notice and comment. But here, rescinding DACA still leaves in place the Department of Homeland Security's wide discretion with respect to individual cases. It can still, on an individual case-by-case basis, decide to defer a removal or not to prosecute a particular NTA. So it's still retaining jurisdiction, just not with respect to the particular DACA program. It still has wide-ranging discretion. Well, the agency does have what I would call ad hoc discretion in any particular case. And that type of discretion is typically not exercised via putting in an application with the government. It typically comes in the course of a removal proceeding. But the standard in this circuit is not whether the government loses all of its discretion. It's whether the agency's discretion has been narrowly limited. And here, the government has abolished the only realistic, programmatic way that this population of 700,000 people could access that discretion. And so when those major policy determinations are made and have this enormous effect and impose limitations on the agency's discretion, the APA says that there's a way that that type of decision is supposed to be made. And that's by putting it through notice-and-comment rulemaking. One further note on the injunction, which I think is very important, Your Honors. The government has not said one word to dispute the overwhelming showing that we made in the district court of irreparable harm, the balance of the equities, or the public interest. In light of that overwhelming showing, the district court was amply within its discretion to find that there was a likelihood of success on the merits and to balance all of the equities in favor of the nationwide injunction that is issued here. And I see my time has expired, so if it's okay with the court, I'd like to hand it over to Mr. Rosenbaum. All right. Thank you, counsel. Good afternoon, Your Honors. Mark Rosenbaum, on behalf of the individual plaintiffs. Judge Owens, I do intend to get to your equal protection arguments. If I can, with your indulgence, I'd like to spend the bulk of my time on the substantive due process issue. The government, in its presentation to you this afternoon, said not a single word with respect to the individual recipients, the current recipients, whose lives will be irreparably injured. If in fact the rescission takes place so as to cut them off from continuing opportunity to renew their status of DACA. The recipients in this case, Your Honor, a doctor, a lawyer, clinical psychologist, a middle school teacher, a special ed teacher, and a law student and community organizer are building meaningful, productive lives of service to our most disadvantaged and underserved communities as consequence of the fact that the DACA program created core liberty interest, interest to remain in this country, interest to build lives to pursue one's dreams, interest of dignity in terms of coming out and no longer being invisible that were in fact enabled precisely the interest of the government in setting up the DACA program in the first place. If in fact these interests are stripped as well as the interest of hundreds of thousands of other dreamers who also came to this country as children, if they are stripped, it denies due process in two ways. First, substantively, and second, by the cruel bait-and-switch method which treated them, first of all, by the government as disposable and then as bargaining chips. I want to talk about four particular factors in place that this Court's doctrine and the Supreme Court doctrine specifically recognizes that's required in determining whether or not liberty interest exists. First, the DACA program began, it began with a promise, a promise that was widely publicized as we have presented in our complaint, widely publicized based upon a shared understanding between the government and between prospective DACA recipients. That interest which the government communicated publicly was an interest that said that if we choose to recognize that you get DACA status then afterwards you will be able to renew that status so long as you play by the rules. The government never said that at the end of two years we can take that welcome mat that we put out for you and use it as the rug that we're going to pull out from under you. The government never called dreamers to your dreamers, dreamers at their own risk. And that's because the arrangement that the government set up in this particular case was one that was narrowly and specifically tailored to what its interest was, an interest in bringing individuals out from the shatters so that they could be productive members of this society, precisely what has taken place in these particular circumstances. The government never said, in fact it ran its orientation programs, it ran its programs of introduction with respect to these individuals that they in fact would be subject to renewal. The memorandum itself says that they would be subject to renewal, that it was to productive young persons who could not know the countries where they sought to be sent back to. In any of these materials, representations, was it promised or mutually understood that the DACA program itself would go on indefinitely? The argument was made, here's what the government did not communicate. The government never said to individuals, the government never said to individuals, you can have this as long as the program exists. You should bear your own risk, you should take your own account of what in fact takes place when you're weighing whether to join. Because what the individuals were asked to do was to come forward, turn over all this information about them, and the government calculated properly that if they said this interest could go away, this interest could go away at the flip of a switch, that in fact they would not get the numbers that were taken. And consider the second factor, Your Honor, look at the substance of what was being presented here. In these descriptions, DACA recipients were told, you can go to college, you can get a job, you can hire people, you can become a doctor, you can become a lawyer, you can become teachers, you can form relationships with individuals as part of those professions. None of that. Are you saying, what are you saying? You're saying they didn't say that the DACA program would go on forever, but they implied it because otherwise no one would have joined the DACA program? I wouldn't say no one, Your Honor, but I would say that that is a materially different program than what they described to individuals. They never said, we can take this away from you, but therefore you shouldn't live. If they had said that, which they could have said, they could have said it has a two-year permanence to it, they could have said it has a five-year permanence to it, they could have even said we're going to reconsider what happens after a couple years. They could have said the administration might change and have different policies. Exactly right, and they never said any of those things. Your argument is based on a shared mutual understanding, and I think it is undercut by the expressed limitations of the DACA program, but I think your point, or I think your colleague made the point that the more time that passes, the greater the reliance interest because now you've got thousands of people who have built lives around the benefits conferred upon them by this program, so to what extent do we look at the reliance interest in analyzing these issues? I love that question, Your Honor, because it goes to the overall workings of the program itself. That's the way that the program in fact operated, with this notion that even though they never said, Judge Wardlow, we can take away this program tomorrow, they always said you can build these sort of interests, not only have these sorts of professions, not only go to college, not only hire jobs, you can build families. Families aren't a two-year commitment. Having children is not a two-year commitment. They said that you could walk freely, but they did not say walk freely with the risk that by doing so, you are handing over the keys to effectively remove you from the country. This court is required, pursuant to Geneva Towers, 489 page 490, the Orloff case, the Wedges-Ledges case, the Sixth Circuit case and the Gunasekara case to take a look at the whole program. What's the understanding? Perry v. Sindeman would have come out exactly the opposite than it had if in fact some precise words and not the overall operation was being considered, which gets me to the third point, Your Honor, and that is what did the government do? Look at footnote 38, that of our complaint. That deals with the way this in fact was operated. The way it was operated is that 99% of all DACA recipients were in fact renewed. What does that tell you? It tells you not just the reliance of the individuals themselves, it tells you that the government itself understood that this was a program that once you were qualified for it, you would be able to be permitted to continue to do it, which brings me to the fourth point with respect to that. What were the statements of government officials? Acting Director Johnson specifically said to the public, made it widely known that the government had to live up to the commitments that it made and that it would in fact honor it. Speaker Ryan said that individuals have organized their lives around this and we will not pull the rug out from under them. We're on a motion to dismiss. We have certainly shown a set of facts that support the notion that the mutual understanding on both sides would make no sense if in fact the notion was that once you got the status, they could pull it away like that. Could I answer your question now, Judge Owens? Yes, in fact, I asked our presiding judge if I could have some extra time. Let me ask you some questions if I could. It may frame it better. Just don't ask me hard ones. All right. So let's say that I have concerns over justiciability on the APA claim. Yes. But let's say I think your Equal Protection Clause claim is strong. Where are we in this case? And I'm not saying this is what we would do, but if we were to say APA is a loser, but motion dismissed, Judge Alsop got that right. Procedurally, where are we in this case? I think Your Honor can affirm this injunction in addition to the APA grants on the Equal Protection grants and here's why, Your Honor. The basis of our Equal Protection argument depends upon four factors that Arlington Heights specifically recognized. None of those factors, none of those factors require a contrary showing, require any sort of showing whatsoever because they're all undisputed facts. Factor number one, the president, both before and after he took office, referred to individuals from the very countries where they're coming from as drug dealers, as druggies, as criminals, as bad individuals. Two, the overwhelming, the disparate impact on this was that 79% of individuals came from Mexico, 93% came from Central American countries under cases like the Wong case. That is a disparate impact based on ethnicity. Factor three. Factor three is the fact that with respect to the part of Arlington Heights in pages 266 and 267, this was a substantial departure from usual reasons. Why is that? It was precisely the opposite of what you would expect because these DACA recipients, your honor, they're not high priority individuals. They weren't doing anything that would indicate that they should somehow go to the top of the list and for your honor, because these individuals from these countries are being treated as bargaining chips for other policies. That's not gonna happen with Norwegians. That's not gonna happen with Western Europeans. That is enough, as Mr. Davidson was saying, to create a circumstance where we have raised substantial questions which is enough to support a preliminary injunction and frankly, there is nothing that the government can say that undoes any of the facts that we said. Their only argument is a legally wrong argument and that is that Reno and Armstrong somehow apply in this case but there's never been a selective prosecution case in the history of this country that has not been a one-off sort of case. There's never been a case where they, every case, I'm sorry, every case has always been we're prosecuting you and we're not prosecuting you in a particular situation. This is Arlington Heights and this case, this court's decision in the Wong case where Ms. Wong, in fact, said, I'm being discriminated against because I'm from Hong Kong. It's an ethnicity argument. Judge Bird's on set. This is not a selective prosecution argument. This is a policy of an overall program, precisely what was involved in Arlington Heights, precisely what's involved here. I know of no case in the history of this country that has the constellation of factors that are undisputed that would say to this court, you can, in fact, affirm on equal protection grounds as well. Well, I think it would be, it would help me in deciding this case, and this is probably for both parties. If you have any authority on the question I was asking and the question is, is that when a party moves for preliminary injunction on one ground and not on another ground in the complaint, may we consider the entire complaint and any arguments raised in the complaint or are we stuck with the issue that's actually pushed forth in the motion? We're pleased to present that in a letter briefing, whatever the court wants, but it is black letter law to say that we can urge any grounds whatsoever in support of a judgment. Thank you, Your Honor. Three points, Your Honor. So first, I'd like to start with Judge Owens' question about BLE. So when asked about BLE, counsel said two things. First, he suggested that BLE might be eliminated to situations where it was traditionally non-reviewable. Which is true, but he didn't have a single answer to why this sort of decision is traditionally non-reviewable. He didn't disagree that Heckler v. Cheney applies to broad decisions and he didn't disagree that Heckler v. Cheney applies to enforcement decisions. So he's got no argument for why this isn't traditionally non-reviewable. He then made an argument about political accountability, but that is equally true in the Heckler situation, in the BLE situation. If a prosecutor says, I'm not prosecuting such and such person or such and such set of crimes, because I don't think the law will allow it, that allows him to escape political accountability just as much if it turns out the law would allow it and he's making a policy decision. But that has simply never been the understanding of how judicial review works of enforcement discretion. There's a narrow exception for a decision that you, if an agency says that it lacks jurisdiction, to enforce the law in situations that go so broad that it could be understood to exceed the constraints of enforcement discretion that are imposed. But deciding to enforce the law, even to zealously enforce the law, even based on a legally erroneous determination that you have to zealously enforce the law, does not exceed the constraints imposed by Congress and therefore the requirements of Heckler v. Cheney simply are not met. The second point I'd like to make is on the merits, on arbitrary and capricious review. Counsel said that we had to show our homework. Two points about that, Your Honor. First, they haven't cited a single case that has said that an agency, when it makes a decision that's based on a legal type of analysis, on the relative legal concerns and legal risk, have to lay out the subsidiary legal reasoning like it's a bench memo to a judge. Not a single case. But if we did have to do it, I think it's fairly notable that they didn't give you a single reason, this entire argument, a single reason why DACA is any different from DAPA. I explained in response to Judge Warlaw's questions why the distinctions that have been proffered between DAPA and DACA just don't hold water. Not a word from them in response. So the notion that we didn't show our homework is simply wrong. The similarity between DAPA and DACA are obvious on its face and they can't refute it. The last thing I will say about that is if there is some sort of secret show your homework requirement under the APA for these sort of legal determinations, then DACA itself fails it because if they also didn't dispute, there's not a word in DACA that describes why it's lawful. There's not a word in DACA that describes the costs. So if the sort of arbitration standard that they're trying to apply to us were to apply to DACA, DACA would fall too. The last point I'd like to make, Your Honor, is on the equal protection claim. We do think AADC applies and forecloses it but even setting aside AADC, at a minimum they have to have clear evidence of discriminatory intent. They don't have a single allegation in their complaint about the acting secretary's motive in this case. The acting secretary is the decision maker here and they don't have a single word of racial animosity. Right, but the acting secretary ultimately reports to the president of the United States and he has said all kinds of things that could be relevant in this litigation and I know we have to wait for the Supreme Court in the travel ban case maybe to understand how we can fully evaluate his statements on equal protection. I get that but I mean doesn't your secretary answer ultimately to the president? So a couple of things about that, Your Honor. First of all, I don't think and they haven't cited any case that says that you can impute to a cabinet secretary invidious motives based on the statements of the president of the United States. That's especially true when the statements by the president aren't about the policy in question and aren't about racial animus. Most of their statements You know any authority that says that you can't impute the statements? I don't think so, Your Honor, but I don't know if you ever had this situation before. I mean I think this is kind of a new ground here. So I would say, Your Honor, that there is a presumption of regularity that there are cases that say that and to impute to a cabinet secretary invidious motives based on statements by another person that are about a different policy and that aren't even about race I think is will not satisfy  The difference in considering the tweets whether the tweets occurred before he became president and after he became president because there were some tweets alleged that the tweets were not about race were not alleged by President Trump that did talk about DACA specifically. Yeah, my recollection is most of those were favorable to DACA and DACA recipients. Some were very favorable, that's true, but some of them were more about this I'll change my mind on DACA if you do the wall kind of thing.  of those things is indicative of racial animus. That's not my question. My question is does it make a difference in the imputation analysis whether it is about race or the messages from the president where before he actually became president versus after he became president. I think the argument for imputation is even weaker and significantly weaker with respect to pre-presidential statements because at that time both as for his own motive it's before he's taken the oath of office and all the rest that we've argued in the travel case but more importantly in the sort of imputation situation he wasn't her boss at the time he made those statements. Would you agree though that the travel ban case will shed some light on this question? Most likely. It potentially will your honor and while in normal circumstances it might make sense to wait to see what the court does there I do think it's important and we thank this court for expediting this appeal and for acting so expeditiously on it. The Supreme Court has suggested that it would be helpful if this court were to act quickly and since I assume the travel case will probably stretch out until the end of June it might not be the most prudent exercise. But let me ask you this. I believe and I saw what the Supreme Court said but why does the government need this case this case putting travel bans aside why does the government need this case decided so quickly when it is said that there are such important equities on the other side? Why all of a sudden now do we have to decide this case? Your honor we are being forced to maintain a policy that gives affirmative sanction to 700,000 illegal aliens in a policy that we think is illegal. That is an extreme policy that requires extraordinary inclusion on the executive branch to require the maintenance of a policy of purported prosecutorial discretion that itself is unlawful. But I thought I saw things about they wanted you know an ordered wind down and so forth. Is that now not the case? There was an orderly wind down for the convenience of the administration itself because of the pipeline issues if you have pending applications. That wind down was literally it was there was an extra 30 days that after September 5th we said that for another 30 days we would accept applications and that was it. That was the wind down. It was not some broad wind down. It is true we haven't revoked permits that work permits that had been authorized so people who got their work permits can maintain them for the life of that work permit. But it is still an extraordinary thing to require us to continue to grant new work permits and new work authorization and new deferred action protection from removal to 700,000 illegal aliens in the circumstance where the chief law enforcement officer of this country has decided that the policy is unlawful and we're being forced to maintain that. That's an extraordinary intrusion. Right now you're still granting DACA applications? Renewals, Your Honor. Pursuant to the injunctions. Okay. I guess I have one last question. My understanding is that there was an action filed in the district court in the Fifth Circuit regarding the rescission by the government. Is that correct? Yeah. Texas has filed suit in district court. Texas filed suit in district court to declare the rescission valid. Is that right? No. To declare DACA illegal. They're challenging DACA directly as they said they were going to. Okay. So just to say I promised they would had there not been a rescission. So they went forward with that. Okay. So what happens if the Texas court declares DACA unlawful and you have four or five  saying that the rescission of DACA was unlawful? Well, so we are You're going to be busy guys. One answer. This is one of many reasons why nationwide injunctions are not appropriate thing for courts to issue. It puts the government in this sort of conflicting position where we could be faced with injunctions going both ways. You'd be in paralysis. Right? Not able to move in either direction. Yeah. What we would do in that circumstance is something we're still figuring out. But, Your Honor, I do think it underscores why nationwide injunctions are a serious problem. But Texas involved in nationwide injunction against DACA. That's correct, Your Honor. But there's plenty of precedent for that. There's I wouldn't say there's plenty. There's some precedent. And in this circuit, there's plenty of precedent that it's improper. Both the L.A. Havens case and the Meinhold case reverse nationwide injunctions. We have cases going both ways in this circuit, too. Anyway, thank you very much, counsel, all counsel, for an excellent argument. And the Regents of the University of California versus the Department of Homeland Security will be submitted. And this court is adjourned for today. Thank you. All rise.
judges: Wardlaw, Nguyen, Owens